UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SELECTICA, INC.,

      Plaintiff,

v.                                        Case No.  6:13-cv-1708-Orl-36TBS

NOVATUS, INC.,

      Defendant.

_____/

ORDER

     Pending before the Court is Plaintiff Selectica, Inc.'s Emergency Motion to

Quash, for Protective Order, for Interim Order Pending Adjudication, and for Sanctions

(Doc. 25).  Defendant Novatus, Inc., has filed its response in opposition to the motion

(Doc. 27), and the matter is ripe for decision.

BACKGROUND

     Plaintiff has invoked the Court's diversity jurisdiction.  (Doc. 1, ¶¶ 1-3).  It

alleges that it is a global leader in contract management services and serves

customers in more than 20 industries, including telecommunications, manufacturing,

healthcare, financial services and government contracting.  (Id., ¶ 5).  Plaintiff has

developed software that the world's most successful companies rely on to improve

their sales and contracting processes.  (Id.).  It also claims ownership of patented

technology and valuable proprietary information in the areas of contract management,

sales configuration, and cloud software.  (Id.).

     Plaintiff complains that Defendant is a direct competitor that has engaged in an

illegal campaign to poach Plaintiff's top salespeople, hire them, and misappropriate

Plaintiff's trade secrets since July, 2013.  (Id., ¶¶ 6, 18).  Plaintiff is suing Defendant

for misappropriation of trade secrets, conversion of confidential and proprietary

information, Florida common law unfair competition, and tortious interference with

business relationships.  (Id.).  Defendant denies Plaintiff's allegations and affirmatively

says that none of the persons it has hired away from Plaintiff signed a non-compete

agreement.  (Doc. 5).  It also alleges that the information in question does not qualify

as a trade secret, and that Plaintiff did not take reasonable efforts to maintain the

confidentiality of the information.  (Id., at 14-16).

      Counsel for the parties met in person on December 9, 2013 to discuss the

making of a confidentiality agreement to protect their clients' trade secrets and other

intellectual property. (Doc. 14 at 11).  The lawyer representing Plaintiff said he would

circulate a draft confidentiality agreement.  (Doc. 27 at 3).  He provided the first draft

to Defendant's counsel on April 3, 2014.  (Id.).  One of the lawyers representing

Defendant reviewed the draft and provided his comments on April 9, 2014.  (Id.).

Plaintiff has not responded to Defendant's comments, and as of May 7, 2014, the

parties had not entered into a confidentiality agreement.

      On April 11, 2014, Defendant notified Plaintiff that it intended to serve

subpoenas for the production of documents and information on twelve non-parties

pursuant to Fed. R. Civ. P. 45(a)(4).  (Doc. 22).  On April 15, 2014, Defendant gave

Plaintiff notice that it intended to serve subpoenas on four additional non-parties.

(Doc. 23).  On April 25, 2014, Plaintiff's lawyer sent an email to Defendant's lawyer.

(Doc. 27-2).  The first sentence of the email states: "We will be moving to quash and

for a protective order and for sanctions in connection with your demonstrably overbroad subpoenas to non-parties."  The email went on to complain that Defendant was seeking Plaintiff's trade secrets without the protection of a confidentiality agreement.  (Id.).  Defendant's lawyer responded that he would look at the issue, and that he had not received any documents.  (Id.).  He also asked about the status of the confidentiality agreement.  (Id.).  Thirty-six minutes later, Plaintiff filed the instant motion.  (Doc. 27 at 3).

The motion includes Plaintiff's counsel's certificate that he "attempted in good faith to resolve this discovery issue with counsel for [Defendant] but was unable to do so before this motion needed to be filed."  (Doc. 25 at 18).  Presumably, this is a reference to the email sent to Defendant's lawyer the day the motion was filed.

Responses to the first batch of subpoenas were due on April 30, 2014 and responses to the second batch were due on May 9, 2014.  (Docs. 22-1; 23-1).  To preserve the status quo until it decides the merits of Plaintiff's motion, the Court entered an Order that: (1) if Defendant had not yet served the subpoenas, it should not do so until the Court rules on Plaintiff's motion; (2) if Defendant had already served the subpoenas, it should inform the subpoenaed parties that they should not produce any documents or things until further notice; and (3) if Defendant receives documents or things in response to its subpoenas, it should treat them as confidential, and not inspect, copy, or do anything else with them until the Court has ruled on Plaintiff's motion.  (Doc. 26).

ANALYSIS

Discovery is intended to be extrajudicial and self-executing.  It should require at most, infrequent court involvement.  Roper v. Apollo Grp, Inc., No. CV212-098, 2013 WL 2285777, at *1 (S.D. Ga. May 23, 2013).  In part, this is because discovery "should be practiced with a spirit of cooperation and civility. . . Courtesy suggests that good faith consultation is appropriate before commencing action that might result in disagreement among counsel."  Middle District Discovery (2001) at 1.  While not binding on the parties or the Court, the Handbook provides useful guidance on the Court's expectations of civility.

Local Rule 3.01(g) is the Court's meet and confer requirement.  It provides that before filing most motions in a civil case, the moving party must confer with the opposing party in a good faith effort to resolve the issues raised by the motion, and file with the motion a statement certifying that the moving party has conferred with the opposing party, and that the parties have been unable to agree on the resolution of the motion.  The term "confer" in Rule 3.01(g) requires a substantive conversation in person or by telephone in a good faith effort to resolve the motion without court action. Counsel who merely "attempt" to confer have not "conferred."  The email Plaintiff's counsel sent prior to filing this motion did not fulfill this district's meet an confer requirements.  Nor did it demonstrate the level of civility and cooperation this district expects of counsel.

Plaintiff has characterized its motion as an "emergency."  When a party files an emergency motion the Court must stop what it is doing and devote its full time and

-4-

attention to the motion.  Fortunately, these disruptions in the orderly flow of the

Court's work are infrequent.  It can generally be said that an emergency exists when

someone faces an immediate threat of irreparable harm to person or property.  Here,

Plaintiff alleges that its motion was necessary to protect its trade secrets, and to

protect its customers from harassment.  These are legitimate concerns.  But they only

became urgent because Plaintiff failed to react until two weeks after the original notice

of intent to issue subpoenas was served.  Plaintiff's failure to provide a more timely

response does not create an emergency for the Court.

Assuming a true emergency had existed, so that it was not possible to meet

and confer before Plaintiff's motion was filed, then under Rule 3.01(g) Plaintiff's

counsel had a duty "to contact opposing counsel expeditiously after filing and to

supplement the motion promptly with a statement certifying whether or to what extent

the parties have resolved the issue(s) presented in the motion." Id. That did not

happen.  Counsel's failure to comply with Rule 3.01(g) is a good and sufficient ground

to deny Plaintiff's motion.

The next issue is whether Plaintiff has standing to move the Court to quash the

subpoenas.  "A party ordinarily does not have standing to quash a subpoena served

on a third party unless a personal right or privilege as to the documents being sought

is asserted."  Nathai v. Florida Detroit Diesel-Allison, Inc., 3:09-cv-1-J-20HTS, 2009

WL 2424570, at *1 (M.D. Fla. Aug. 5, 2009).  Plaintiff has alleged a personal right or

privilege in the subpoenaed documents and Defendant has not disputed Plaintiff's

standing.  On this record, the Court finds that Plaintiff has standing to move to quash in order to protect its trade secrets.

The scope of discovery is broad "in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement." Coker v. Duke & Co., Inc., 177 F.R.D. 682, 685 (M.D. Ala. 1998).  The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).  Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978).  A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D. Pa. 1980); see also Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984) (If Court is in doubt concerning the relevancy of requested discovery the discovery should be permitted.).

Although the scope of discovery is broad, the court has discretion to circumscribe even relevant discovery.  Federal Rule of Civil Procedure 26(c)(1) provides that, "a party ... may move for a protective order in the court where the action is pending ... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..."

Thus, the Court employs the good cause standard in deciding whether to issue a protective order.  To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." U & I Corp. v. Adv. Med. Design, Inc., 251 F.R.D. 667, 673 (M.D. Fla. 2008) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).

Factors the court considers in determining whether good cause has been shown include: "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order." In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987) (citing Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1205 (11th Cir.1985)).  In addition, to good cause, Federal courts have engrafted a more demanding balancing of interests approach to Rule 26(c). Farnsworth, 758 F.2d at 1547.  The balancing of interests test requires the Court to balance the party's interest in obtaining the information against the opponent's interest in keeping the information confidential.  Id.; Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312-13 (11th Cir. 2001).

Defendant has issued subpoenas to Plaintiff's existing and potential customers, and to potential employers and recruiters.[1]  (Doc. 27 at 5-6).  The subpoenas

---

[1] A party issuing a subpoena must take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena.  FED. R. CIV. P. 45(c)(1).  "The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Id.  If a subpoena "subjects a person do undue burden," the Court "must quash or modify the subpoena."  FED. R. CIV. P. 45(c)(3)(A)(iv). The Court is unaware of any objection, by any third party, to any of Defendant's subpoenas.

command recipients to produce 45 categories of documents.  The terms "document,"

"documents," "communication," "communications," "person," and "Trade Secrets," as

used in the subpoenas are all-encompassing.  (Doc. 22-1).  The time frame for most

of the subpoenas is January 1, 2013 to the present.  (Id., at 6).  Among other

categories of documents, Defendant has subpoenaed any and all that reflect, regard,

or relate to Plaintiff, its Trade Secrets, and the employees Defendant hired away from

Plaintiff.  (Id.).

   Plaintiff argues that the subpoenas are overbroad and harassing.  It contends

that some of the information sought is confidential, other information is irrelevant, and

that the relevant information is available through more convenient, and less

burdensome means.  (Doc. 25 at 12). Plaintiff also maintains that some of the

categories of documents are simply unintelligible.  (Id. at 15).  Defendant counters that

in light of Plaintiff's claims, the subpoenas are "appropriate and reasonable."  (Doc. 27

at 7).  It also argues that the scope of discovery it seeks is not unlike that requested in

Plaintiff's first request for production.  In its request for production, Plaintiff has

utilized similarly all-encompassing definitions of the terms "Document" and

"Communications(s)," states that the relevant time period is May 1, 2013 to the

present, and has asked Defendant to produce some of the same documents it is

seeking from third parties.  (Doc. 27-3).

   The Court appreciates counsels' desire to discover all information that is

relevant to this controversy.  Presumably, that is why both sides have cast broad nets,

having fine mesh.  However, counsel must not lose sight of the principles of

proportionality, reasonableness, convenience, and common sense.  Rule 26(g)(1)(B)(iii) provides that when counsel signs a discovery request, response, or objection, they are certifying that "neither is unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."

The Court finds that if counsel for Plaintiff had promptly initiated a true meet and confer with Defendant's counsel when the first notice of intent to issue subpoenas was served, the parties should have been able to work out most, if not all, of Plaintiff's concerns without Court intervention.  The Court also finds that if the parties had promptly entered into a confidentiality agreement that would have reduced or possibly eliminated some of Plaintiff's concerns.  Accordingly, the Court finds Plaintiff partly to blame for the situation in which it finds itself.

The Court finds that Defendant is also at fault.  It has wrongly attempted to subpoena Plaintiff's trade secrets from non-parties.  Some or all of those third parties have entered into confidentiality agreements with Plaintiff which the subpoenas may cause them to violate.  In the absence of a confidentiality agreement or protective order, Defendant should not have unfettered access to Plaintiff's trade secrets.  Defendant should also reconsider the scope of its subpoenas and the burden and expense they may impose on third parties.  The Court also agrees with Plaintiff that some of the categories of documents covered by the subpoenas are at best, ambiguous.

For these reasons, the parties are ORDERED to try again, beginning with a

real meet and confer, preferably in person but if that is not possible, by telephone. They shall engage in a civil, cooperative discussion of each of the categories of documents Defendant wishes to subpoena and try in good faith to resolve their legitimate concerns.  The parties should also make a real, good faith effort to finalize and execute a confidentiality agreement.  They have 14 days from the rendition of this Order within to accomplish these tasks.  If, at the conclusion of this exercise Court intervention is required, then the parties are free to file new motions.  In the meantime, Plaintiff's motion is DENIED and the Court's Order (Doc. 26), remains in force.

Federal Rule of Civil Procedure 37(a)(5) provides for the award of reasonable expenses including attorney's fees in connection with most motions for a protective order.  Here, the parties are both at fault and therefore, the Court finds that neither should recover its expenses.

DONE AND ORDERED in Orlando, Florida, on May 13, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel