**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

SELECTICA INC.,
a California corporation,

Plaintiff, Case No. 6:13-cv-1708-CEH-GJK

vs.
NOVATUS, INC.,
a Florida corporation,

Defendant.
_______________________________/

# PLAINTIFF'S MOTION FOR SANCTIONS DUE TO BAD FAITH SPOLIATION OF EVIDENCE

Plaintiff, Selectica Inc. ("Selectica"), pursuant to Fed. R. Civ. P. 37 and the Court's inherent power, hereby files its motion for sanctions against Defendant, Novatus, Inc. ("Novatus"), due to bad faith and intentional destruction of crucial evidence in this case, and moves the Court for an order striking Novatus' pleadings, or in the alternative, entering an adverse inference, granting Plaintiff's attorneys fees and costs relevant to the instant motion, and granting any additional relief that the Court deems appropriate. As grounds in support Plaintiff states as follows:

## Introduction

The instant motion sets forth a classic case of bad faith, spoliation of evidence. This is a rare case indeed, because a Novatus' employee actually *admitted* under oath that he intentionally destroyed evidence after learning about this litigation and specifically because of this litigation. This is not a case of mere negligence or mistake. Notice and the duty to preserve also cannot be disputed. The intentional spoliation was committed fifty-four (54) days after the complaint was filed and ten (10) days after Plaintiff served its document preservation letter to Defendant. The


HALL, LAMB AND HALL, P.A., PENTHOUSE ONE, 2665 S. BAYSHORE DRIVE, MIAMI, FLORIDA 33133 • TEL. (305) 374-5030 • FAX (305) 374-5033

evidence was destroyed intentionally and in bad faith, despite this information being material to Plaintiff's claims. This egregious conduct warrants the striking of Novatus' pleadings in order to remedy the injustice and unfair prejudice sustained by Plaintiff.

**Background and Timeline of Events**

On November 4, 2014, Plaintiff filed the instant action asserting claims for misappropriation, conversion, tortious interference, and unfair competition. Specifically, Plaintiff alleged that four former employees[1] suddenly resigned, all in the month of September 2013, and began employment with Defendant. D.E. 1 at ¶ 21-25. Prior to their departure from Selectica, these employees accessed and copied enormous amounts of trade secrets and other confidential information belonging to Selectica. *Id.* at 26. Soon after these four individuals began employment with Novatus, the misappropriated information was downloaded and transferred onto Novatus' computer systems. Additionally, the former employees began using the stolen confidential and proprietary information to target Plaintiff's customers and prospective customers and unlawfully compete with Plaintiff for business in the contract management solutions business. Novatus' senior level management, Robert Gambotz (Chief Executive Officer) and Shannon Muniz (Senior Vice-President of Sales) were aware of the stolen information, requested that the information be sent to them, and also engaged in conduct that forms the basis of this action. In fact, on the four former employees' first day of orientation at Novatus, Ms. Muniz reviewed Selectica's confidential list of hundreds of qualified leads (that is, prospective clients that Selectica spent years researching and compiling), divided up those leads amongst the former Selectica employees, and determined who would solicit which leads. When asked if Ms. Muniz requested Vicki Sorensen to bring misappropriated Selectica documents with her to orientation, Ms. Sorensen responded:

[1] Vicki Sorensen, Marilyn Salyer, Ian Connerty, and Graham Holt.

A: Yeah, I said I had it, and she [Ms. Muniz] said, "Bring it with you to orientation then." She didn't request it from me. I told her I had these files, and she said, "Okay, well, bring them to the orientation."

...

**Q: You wrote...and seems to be addressed to Jay Gramer, towards the bottom of the e-mail: "I think we may have passed some good leased to you this week." What were you referring to?**

A: We're referring to...some of the leads that we had gone through during the new-hire orientation.

**Q: What leads did go through during the new-hire orientation?**

A: These would have been...likely Selectica leads.

...

**Q: Well, earlier, you testified that you don't recall anything with that external hard drive at orientation?**

A: I don't remember what happened at new-hire orientation. I didn't remember exactly. So this is prompting my memory, yes. Apparently, we did go through the Opportunity Report during new-hire orientation. I don't remember if it was my report. It very well could have been.

...

**Q: Well, it looks like the SLTC ops were divvied up. What does that mean?**

A: And if I'm remembering, I think we went through the list and determined whose was in what territory of those opportunities.

**Q: And...this giving up of Selectica opportunities took place at the orientation --**

A: yes.

**Q: -- with Shannon Muniz?**

A: Yes.

...

**Q: And you testified at your prior deposition that...Shannon...was initiating effort to target Selectica customers. Is this her effort to target Selectica customers?**

A: Yes, this would have been it.


HALL, LAMB AND HALL, P.A., PENTHOUSE ONE, 2665 S. BAYSHORE DRIVE, MIAMI, FLORIDA 33133 • TEL. (305) 374-5030 • FAX (305) 374-5033

(*See,* Sorensen Dep. 100:5-13; 109-113:18-15). Novatus' campaign to solicit Selectica's customers and unlawfully compete with prospective customers, all while using Selectica's proprietary and confidential information, was premeditated, targeted, and direct.

The instant motion focuses on the spoliation committed by Graham Holt ("Mr. Holt"), one of the aforementioned former employees who, prior to resigning from Selectica, stole large amounts of trade secret and confidential material belonging to Plaintiff. Upon Mr. Holt's resignation on or about September 30, 2013, and pursuant to "Selectica's Proprietary Information and Inventions Agreement" ("Proprietary Agreement")[2] executed by Mr. Holt, he was contractually obligated to "promptly return to the Company [Selectica] all items containing or embodying Proprietary Information." This contractual duty was no secret to Novatus. Indeed, prior to hiring the four employees, one of them emailed the Proprietary Agreement to Ms. Muniz for her review:

> **Q: (By Mr. Hall): Did you ever see the contract [Proprietary Agreement] that the four employees that you hired from Selectica in September of 2013, the one that they had signed with regard to Selectica's business information?**
>
> A: Yes.
>
> **Q: When did you see that for the first time?**
>
> A: I believe I had…one of them e-mail it to me prior to hiring any of them.

Muniz Dep. 47:7-15. Notwithstanding, and despite both the duty owed to Selectica to return its proprietary information and Novatus' first-hand knowledge of this duty, Novatus' employee failed to return all documents belonging to Selectica, and instead kept large amounts of confidential and proprietary information on a "cloud storage system" called Box.com.

*As Early as October 9, 2013, Novatus Knew that Mr. Holt was in Possession of Selectica's Proprietary Information*

---

[2] The Proprietary Agreement has been exchanged during discovery.

Mr. Holt's failure to return all documents belonging to Selectica was no accident. Indeed, soon after Mr. Holt began employment with Novatus in October 2013, he – along with the other former employees – began using Selectica's trade secrets and proprietary information to unlawfully compete with Plaintiff. Discovery to date reveals that a massive amount of Plaintiff's information was downloaded onto Novatus' computer systems. Furthermore, the former employees disclosed the internal workings and "bugs" in Plaintiff's software product to Plaintiff's customers and prospective customers in an effort to steal clients. Novatus' tortious conduct, and the fact that Mr. Holt possessed Selectica's proprietary information on his box.com account, was known by Novatus' senior level management, including Ms. Muniz..

Indeed, during Mr. Holt's deposition on August 14, 2014, he confirmed that Novatus knew that he was in possession of Selectica's confidential and proprietary information on his box.com account, including pricing details. He also confirmed that while he was a Novatus employee, he intentionally deleted this evidence.

> **Q: Now, I was curious about the Box that you have her access to. You've testified that you uploaded Selectica's information into a Box. Do you recall that testimony?**
>
> **A: I do.**
>
> **Q: And is that the same Box that you deleted?**
>
> **A: That's correct.**

(*See* Holt Dep., 210-11:23-4). During Ms. Muniz's deposition on November 5, 2014, she confirmed Novatus' knowledge and receipt of file sharing links from Mr. Holt's box.com account containing information belonging to Selectica:

> **Q:** [reading an email from Mr. Holt to Ms. Shannon Muniz] **"Hi, Shannon. I wanted to send over the new pricing model from SLTC." That's Selectica, correct?**

**A: Yes.**

**Q:** [again reading from the email] **"And their old pricing we used up until a month ago or so. I don't know if you wanted me to send the physical copies as well as attachments or if you preferred setting up another box folder."**

**...And then it says: "This way you can look, slash, preview the files without translating them or having them on your local machine." Was there some fear of having it on your computers?**

**A: No...**

**Q: But you were getting it from Graham Holt, this pricing data, correct? And what did you say in response to that e-mail?**

**A: <u>To send it to me</u>.**

**Q: Don't send it, it's private?**

**A: No.**

**Q: Send it to me?**

**A: <u>Right</u>.**

**Q: You said don't send it to you?**

**A: No.**

**Q: What did you say?**

**A: <u>I said: "You can just send it to me." I wanted to be aware of what he had</u>.** It was not information that was of any value to use but **if it was a Selectica document, <u>I needed to know what he had</u>.**[3]

**Q: And then [Mr. Holt] went further and said, page 0003258, quote: "I realize that I don't have the docs locally so I've attached the links below. You can download them from this folder into the box."**

**And Graham [Holt] tells you that, how to get them, correct?**

**A: Yes.**

[3] Plaintiff obviously disputes, and the evidence in this case undoubtedly contravenes, Ms. Muniz's statement that Selectia's proprietary information was "not information that was of any value to use."

(*See*, Muniz Dep., 152:3-10, 14-19, 22-25; 153:1-20). Testimony from Novatus' employee and senior executive confirms that as of October 9, 2013, Defendant was aware of the evidence contained on its sales executive's Box.com account.

*The Instant Lawsuit and Preservation Letter Triggered Novatus' Duty to Preserve the Evidence*

On November 4, 2013, twenty-six (26) days after Novatus (through Ms. Muniz) confirmed in writing that it was on notice of the Selectica documents stored on Mr. Holt's box.com account, Plaintiff filed the instant lawsuit.[4] This act alone triggered Novatus' duty to ensure that all evidence was not altered or destroyed. On December 17, 2013, Selectica sent a litigation hold letter ("Preservation Letter") to David Wood, counsel for Novatus (*See*, Preservation Letter attached hereto as Exh. 1). The Preservation Letter advised Mr. Wood of his duty, as well as Novatus' duty, to ensure that all documents related to the instant litigation were preserved. Specifically, the Preservation Letter put Novatus on notice of critical requirements:

> This letter is being sent to you to remind **you of your duty and the duty of Novatus Inc. ("Novatus"), to preserve records in any form, including, but not limited to, electronically stored information**, and other evidence that may be relevant to the above referenced matter. By law, Novatus must ensure that **all records that contain any information relating to this matter are retained and protected, including any and all metadata relating thereto.**
>
> **Novatus should immediately suspend deletion, overwriting, or any other possible destruction of electronic information**. You must retain any and all records that contain information that has any connection whatsoever to any of the issues relevant to the above referenced matter.
>
> "Record" means anything that stores information…[i]n any medium – paper [or] electronic…
>
> Preservation efforts should include, but are not limited to, the following:
>
> - **Forensically preserving data contained on electronic media…**

[4] On December 20, 2014, Selectica also brought suit against Holt individually in the Superior Court of the State of California, in and for the County of San Mateo (Case No. CIV525938).

> - **Data stored off-site should also be maintained and left unaltered until forensically preserved**
>
> - Preservation of all application programs and utilities used to process preserved electronic data
>
> - Maintenance of activity notes/logs for all steps taken to preserve potentially relevant documents and electronic data, including the date(s) of any such steps and the individual(s) who performed each step.
>
> Failure to abide by the terms of this letter could result in entry of sanctions and/or the filing of a spoliation claim against you or Novatus.

*See*, Preservation Letter at pgs. 1-3 (emphasis added). Despite being served with the instant complaint and Plaintiff's Preservation Letter, Novatus breached its duty to preserve and committed spoliation of evidence.

*Novatus' Employee Deleted Crucial Evidence from the Box.com Account in Bad Faith*

In an effort to conceal wrongdoing, Novatus' employee purged hundreds of files containing evidence in this case. Novatus' culpable state of mind is revealed not only by the actual destruction of data, but by the *timing* of the spoliation. Indeed, although some files were deleted in November and December of 2013 – indeed after the lawsuit was filed – the primary destruction of evidence occurred on December 28, 2018 around 9:20 p.m., merely *ten days* after Plaintiff's Preservation Letter. Mr. Holt admitted to destroyed evidence during his deposition:

> **Q: Your production to Selectica in the case indicates that in a period in November and December, you removed – deleted thousands of files from your Box account. What prompted you to do that?**
>
> A: ***Finding out about the litigation was what prompted me to do that.***
>
> **Q: How much time was there between when you found out about the litigation and when you began deleting the documents from the Box account?**


HALL, LAMB AND HALL, P.A., PENTHOUSE ONE. 2665 S. BAYSHORE DRIVE, MIAMI, FLORIDA 33133 • TEL. (305) 374-5030 • FAX (305) 374-5033

**A: I believe it was only just a few days.**

**Q: How did you go about doing that?**

**A: The deletion?**

**Q: Yes.**

**A: I went into the application and just deleted – deleted the subfolders that I thought would, you know, potentially put my current employer [Novatus] in jeopardy.**

**Q: How did you determine which documents to keep and which to delete?**

**A: Again, I – all my folders were a Selectica master foler. Beneath that, marketing material, sales material, customers. So I deleted at a hierarchy. So it just pushed all the documents beneath those hierarchies.**

(*See*, Holt Dep., 180-181:17-15). Specifically, Holt deliberately emptied his "trash" in order to permanently delete the documents.

**Q: Can the user, i.e., the account holder, empty the trash yourself?**

**A: Yes. I mean, that's essentially what you do. It's just like you would on your laptop. You can dump something in the trash. And if it's just sitting in the trash, you can recover it. But if you permanently delete it, that's when it will kick to -- the only way to recover it is from the actual database level.**

**Q: And did you -- did you perform a permanent deletion in December?**

**A: I did.**

(*See*, Holt Dep., 182-83:22-8). Moreover, Holt conceded that the window for recovering the data has passed.

**Q: ...And that means that at that point, just as I think you've explained it, it's only Box that can recover that data for a period of time?**

A: Correct.

> **Q: Is that data still recoverable from Box or has Box purged --**
>
> A: No.
>
> **Q: -- the trash, essentially?**
>
> MR. WASHINGTON: If you know. Do you know?
>
> THE WITNESS: Yeah. It's beyond the window. I think the max window is four weeks.

(*See*, Holt Dep., 185:9-21).

Based on the foregoing, including the testimony of Novatus' employee and Senior Vice-President of Sales (Ms. Muniz), it is undisputed that the evidence existed at one time, Novatus was on notice that the evidence existed, and a duty arose to preserve the evidence. Notwithstanding, one of Novatus' employees intentionally, and in bad faith, destroyed critical information in this case. This flagrant spoliation of evidence warrants sanctions by this Court.

**ARGUMENT**

**I. The Elements of Proof to Establish Spoliation of Evidence**

"Although federal law controls spoliation sanctions, the Eleventh Circuit has not set forth specific guidelines on the imposition of such sanctions." *Southeastern Mech. Servs., Inc., v. Brody, et al.,* 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009); *see also, U.S. ex rel. King v. DSE, Inc., et. al.,* 2013 WL 610531, at *7 (M.D. Fla. January 17, 2013). Thus, courts "may be 'informed' by state law, as long as it is consistent with federal law." *Optowave Co. v. Nikitin,* 2006 WL 3231422, at *8 (M.D.Fla. Nov. 7, 2006). Under Florida law, "spoliation is established when the party seeking sanctions proves **(1)** that the missing evidence existed at one time; **(2)** that the alleged spoliator had a duty to preserve the evidence; and **(3)** that the evidence was crucial to the movant being able to prove its *prima facie* case or defense." *Floeter v. City of*

*Orlando*, 605CV-400-ORL-22KRS, 2007 WL 486633 (M.D. Fla. 2007); *U.S. ex rel. King v. DSE, Inc., et. al.,* 2013 WL 610531, at *7 (M.D. Fla. January 17, 2013). Further, courts in the Eleventh Circuit will impose sanctions for spoliation of evidence "when the absence of that evidence is predicated on bad faith...'mere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'" *Floeter*, 2007 WL 486633, at *5 (M.D. Fla., Feb. 9, 2007) (*quoting Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997); *see also, U.S. ex rel. King*, 2013 WL 610531, at *6 (M.D. Fla. 2013) *report and recommendation adopted, aff'd (Jan. 15, 2014*), 2013 WL 608541 (M.D. Fla. 2013) ("The key to unlocking a court's inherent power is a finding of bad faith. A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than its inherent power, but 'if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.'").

**II. Defendant Engaged in Unlawful Spoliation of Evidence**

A. Defendant's Intentional Destruction of Evidence Constitutes Spoliation

"'Spoliation' is the 'intentional destruction, mutilation, alteration, or concealment of evidence.'" *Optowave Co.,* 2006 WL 3231422, at *7 (M.D.Fla. Nov. 7, 2006) (quoting Black's Law Dictionary 1437 (8th ed.2004)); *see also, U.S. ex rel. King*, 2013 WL 610531, at *6 (M.D. Fla. 2013) *report and recommendation adopted, aff'd* (Jan. 15, 2014), 2013 WL 608541 (M.D. Fla. 2013) ("Spoliation is the destruction of evidence or the significant and meaningful alteration of a document or instrument."). "Sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Optowave Co.,* 2006

WL 3231422, at *7 (M.D.Fla. Nov. 7, 2006). In imposing sanctions, courts in the Eleventh Circuit have "broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Id.*

B. <u>Novatus' Bad Faith and Intentional Destruction of Crucial Evidence Satisfies the Elements to Predicate a Spoliation Claim</u>

Defendant's misconduct satisfies the requirements for a finding of spoliation. First, and admitted to by Mr. Holt, the destroyed evidence existed at one time on Mr. Holt's Box.com account. Second, Defendant was under a legal duty preserve relevant evidence. Third, the destroyed evidence is critical to Plaintiff's case. Last, Defendant acted in bad faith when it intentionally destroyed the relevant evidence.

1. *The Evidence Once Existed on Novatus' Employee's Box Account*

Prior to leaving Selectica, Mr. Holt copied Selectica's trade secret, confidential, and proprietary information from Selectica's computer systems to his individual "box.com" account, a web-based system that stores information in the "cloud." The intel copied included Statement of Work information, pricing models, and other confidential and proprietary information belonging to Selectica (*See*, NOVATUS001220, NOVATUS003258). While employed by Novatus in November and December of 2013, and by his own admission, Mr. Holt deleted hundreds of files from his Box account. Tellingly, when asked what prompted him to purge this evidence, Holt replied, "Finding out about the litigation was what promoted me to do that." (*See*, Holt Dep., 180:17-23).

2. *Defendant Was Under a Duty to Preserve Relevant Evidence*

"Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute." *U.S. ex rel. King*, 2013 WL 610531, at *7 (M.D. Fla. January 17, 2013) *report and*

*recommendation adopted,aff'd (Jan. 15, 2014)* 8:08-CV-2416-T-23EAJ, 2013 WL 608541 (M.D. Fla. 2013); *see also*, *Southeastern Mech. Servs., Inc.*, 2009 WL 224395, at *2 (M.D. Fla. July 24, 2009). Additionally, a party's duty to preserve all relevant materials is triggered directly when it receives a letter requiring the preservation of evidence. *Optowave Co.*, 2006 WL 3231422, at *10 (M.D. Fla. Nov. 7, 2006) ("[Defendant's] duty to preserve all relevant materials…was triggered directly when [it] was put 'on notice that it has a legal duty to preserve all evidence as set forth in [an] attached Notice Regarding Non-destruction of Computer Files.'"); *Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *6 (M.D. Fla. Dec. 13, 2012) (Letter directing defendant not to destroy any evidence triggered the duty to preserve). "Breach of the preservation duty, also, is premised on reasonableness: A party breaches its duty to preserve relevant evidence if it fails to act reasonably by taking 'positive action to preserve material evidence.'" *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525 (D. Md. 2010).

Ms. Muniz's testimony establishes that Novatus knew that one of its employees was in possession of evidence in this case. Thus, Novatus cannot distance itself from its duty to have preserved all evidence relevant to this litigation. Indeed, the "obligation [to preserve evidence runs] first to counsel, who ha[s] a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72-73 (S.D.N.Y. 1991); *see also*, *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 18 & n.* (D. Neb. 1983). Further, Novatus' "corporate managers [were] responsible for conveying this information [and the duty to preserve] to the relevant employees." *Id.* "It is no defense to suggest…that particular employees were not on notice. To hold otherwise would permit an agency, corporate officer, or legal department to

shield itself from discovery obligations by keeping its employees ignorant. The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1279 (M.D. Fla. 2009) *(quoting Turner*, 142 F.R.D. at 73.); *see also, In re NTL, Inc. Secs. Litig. v. Blumenthal, et al.*, 244 F.R.D. 179, 198 (S.D.N.Y. 2007) (finding spoliation sanctions were warranted where the defendant company failed to adequately convey to its employees the need to preserve relevant documents and ESI); *Golia v. Leslie Fay Co.*, 2003 WL 21878788, at *9-11 (S.D.N.Y. Aug. 7, 2003) (finding spoliation sanctions were warranted where defendant company failed to prevent employees from destroying evidence it was under a duty to produce).

In the matter of *In re NTL, Inc. Secs. Litig. v. Blumenthal, et al.*, 244 F.R.D. 179 (S.D.N.Y. 2007), the court held that plaintiffs demonstrated that an adverse inference instruction against defendant was warranted where the defendant company failed to adequately convey to its employees the need to preserve relevant documents and electronically stored information ("ESI"). The court explained that "[a]lthough [defendant] sent out hold memos…, those hold memos were not sufficient, since they were subsequently ignored by [defendant]." *Id.* at 194. Further, the court found dispositive that many of defendant's employees never received the hold memoranda and that defendant never reminded its employees of the need to continue preserving relevant documents and ESI. *Id.* at 198. Consequently, defendant was only able to produce e-mails for thirteen out of fifty-seven current and former key employees. *Id.*

In the same vein, sanctions were warranted in *Golia v. Leslie Fay Co.*, 2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003). There, the court awarded sanctions based on defendant company's failure to prevent two key employees from destroying evidence it was under a duty to

produce. Notably, the court rejected defendant's argument that it was not responsible for one of the employee's destruction of the evidence because she was already fired at the time of the spoliation. *Id.* at *9. The court explained that "[r]egardless of the [employee's] exact employment status at the time that she destroyed the documents, [the] documents should have been produced long before [her] firing…[and] both [key] employees at the time failed to do so. *Id.* Thus, the court held that spoliation sanctions were appropriate. *Id.* at *11.

In comparison, the court in *Golia* imposed sanctions despite the spoliation occurring *after* the employee was already fired. Here, Novatus' employee committed spoliation *during* his employment with Novatus[5], and while Novatus was on notice that Mr. Holt had evidence on his Box.com account.

The duty to preserve cannot be disputed. Plaintiff filed the instant lawsuit on November 4, 2013, and sent its Preservation Letter on December 17, 2013. To comply with its legal duty, both counsel and Novatus' directors should have issued a corporate wide memorandum to suspend "all orders, practices, or policies that could lead to the destruction of evidence." *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1278 (M.D. Fla. 2009). Preservation could have and should have been achieved with nominal effort and expense. In fact, given that Ms. Muniz had direct, first-hand knowledge that Mr. Holt had Selectica files in his possession, custody, and control, Novatus and Novatus' counsel should have taken affirmative steps to ensure this information was not deleted. However, Novatus breached its duty in destroying evidence "relevant in the action…reasonably calculated to lead to the discovery of admissible evidence…and reasonably likely to be requested during discovery...". *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987).

3. *The Destroyed Evidence is Crucial to Plaintiff's Case*

[5] To date, Mr. Holt is still employed by Novatus.

In evaluating spoliation sanctions there is a "Catch 22" because 'after evidence no longer exists, it is often difficult to evaluate its relevance and the prejudice associated with it.' *U.S. ex rel. King,* 2013 WL 610531, at *8 (M.D. Fla. January 17, 2013) (*quoting Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 502 n. 7 (D. Md. 2010). Thus, "courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of the evidence." *Southeastern Mech. Servs., Inc.,* 657 F. Supp. 2d at 1300 (*citing Kronisch v. U.S., et al.,* 150 F.3d 112, 128 (2d Cir. 1998)); *see also, Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC,* 2012 WL 10817204, at *3 (M.D. Fla. Nov. 30, 2012). "[T]he prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." *Kronisch v. U.S., et al.,* 150 F.3d 112, 128 (2d Cir. 1998).

"The substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a plaintiff." *Southeastern Mech. Servs., Inc.,* 657 F. Supp. 2d at 1300. Moreover, bad faith alone 'gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for destruction.' *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009) (citations omitted).

In the instant case, the information deleted by Novatus' employee is not only relevant to Plaintiff's claim for misappropriation, it is a critical component to finding that Novatus' misappropriated Plaintiff's confidential information for Defendant's pecuniary gain, and unlawfully competed with Plaintiff for customers in the contract management market. Furthermore, without this evidence, Plaintiff is unable to know whether its trade secrets and

proprietary information were copied elsewhere, modified, or stored on other devices. Plaintiff cannot be sure who else viewed the destroyed documents, particularly other Novatus employees, Plaintiff's customers, or prospective customers. Novatus should be sanctioned accordingly.

4. *Evidence was destroyed in Bad Faith.*

i. Direct Evidence Reveals Novatus' Bad Faith

'It is not sufficient to notify employees of a litigation hold and expect that the [employee] will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched [and…preserved].' *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1281 (M.D. Fla. 2009) (*quoting Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Failing to do so is indicative of bad faith. *Swofford,* 671 F. Supp. 2d at 1281.

Additionally, bad faith may be established where spoliators have motive and opportunity to wipe relevant data. *See Southeastern Mech. Servs., Inc.,* 657 F. Supp. 2d at 1300 (Bad faith established where the 'wiped' state of [electronic devices previously containing relevant evidence] can only be attributed to deliberate and intentional actions."); *see also, Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *7 (M.D. Fla. Dec. 13, 2012) (finding bad faith where Defendant intentionally threw her laptop into the river to prevent Plaintiff from investigating her activities). Simply put, "this is not a circumstance of inadvertent destruction of evidence or negligence in the loss of material data from which the Court is being asked to infer bad faith. Rather, it is a case of knowing and willful disregard for the clear obligation to preserve evidence…the bad faith is clear, and the prejudice to Plaintiff is substantial." *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009).


HALL, LAMB AND HALL, P.A., PENTHOUSE ONE, 2665 S. BAYSHORE DRIVE, MIAMI, FLORIDA 33133 • TEL. (305) 374-5030 • FAX (305) 374-5033

In *Southeastern Mech. Servs.*, an "employer filed action against former employees alleging misappropriation of confidential and trade secret business information as well as customer lists for their own benefit in order to give them unfair and unjust advantage in operating competing business." *Id.* at 1293. The Court later granted the plaintiff employer's motion for sanction due to spoliation of evidence upon finding that the defendant employees wiped all emails, calendar items, text messages, and telephone records from their laptops and BlackBerries issued to them by their new employer and co-defendant. *Id.* at 1295, 1302.

Similarly here, Plaintiff is the former employer of Mr. Holt, now under the employ of Defendant who has misappropriated confidential and trade secret business information, including customer lists and pricing information. Novatus was on notice that Mr. Holt stole this information on stored it on his Box.com account, but never once contacted Plaintiff to advise of the misappropriation. Furthermore, Novatus, through Ms. Muniz, specifically told Mr. Holt "you can send [the stolen information] to me." (*See*, Muniz Dep., 152:3-10, 14-19, 22-25; 153:1-20). Novatus' employee had motive and opportunity to destroy the evidence on his Box.com account to hide his tracks in an effort to escape liability, both personally and with respect to his employment with Novatus.

> **Q: How much time was there between when you found out about the litigation and when you began deleting the documents from the Box account?**
>
> **A: I believe it was only just a few days.**
>
> **Q: How did you go about doing that?**
>
> **A: The deletion?**
>
> **Q: Yes.**

> **A: I went into the application and just deleted – deleted subfolders that I thought would, you know, potentially put my current employment in jeopardy.**

(*See*, Holt Dep., 180-81:17-8). When asked why he did not delete all of the evidence in one sitting, Holt admitted that it was an oversight on his part.

> **Q: Mr. Holt, in the documents -- among the documents that you produced to Selectica in the case include some Selectica materials, including statements of work, for example. Why did you not delete those documents?**
>
> **A: Again, it probably was -- it probably was in the folder structure -- a lower folder structure that I -- the hierarchy probably didn't reflect something that I was going through and kind of coming through. I didn't down go all down, deep. I was trying to do it at a mass level.**
>
> **Q: So is it fair to say that your -- that the Selectica documents that escaped deletion were an oversight or just a by-product of the way in which you went about doing it?**
>
> **A: Absolutely.**
>
> **Q: And it was your intent to delete all of the Selectica documents?**
>
> **A: It was…**
>
> **Q: But you deleted these specific references on October 2nd (indicating). Why these and not all?**
>
> **A: As I stated earlier, it was just -- it was an oversight on my part. I wasn't – I was quitting one job, starting another. It was -- you know, wasn't top of mind for me.**
>
> **Q: Well, it was more than an oversight. You, in point of fact, actively transmitted these documents to your fellow workers at Novatus. I mean, that's what we spent today on. So my question is: Why would you delete some and then use the rest, the undeleted documents, transmitting it to your fellow workers at Novatus?**
>
> **…**
>
> **THE WITNESS: Again, it was an oversight to not – to not go in and delete all of them. I thought I was getting the majority of them with this selection.**

(*See*, Holt Dep., 198:22-25; 199:1-11, 19-21). Finally, Mr. Holt admitted that even after being informed of his duty to protect and preserve relevant documents, he made no attempt to contact Box or any other electronic host to undo his mass deletion.

> **Q: What steps did you take, when you received that notice, to contact Box or any other electronic host to undo the trashing exercise and preserve the documents?**
>
> **A: I didn't do any.**

(*See*, Holt Dep., 195:11-14). Direct evidence of bad faith is clearly present.

i. Circumstantial Evidence Reveals Novatus' Bad Faith

Even assuming *arguendo* that Novatus' intentional trashing and deleting exercise does not constitute direct evidence, there is circumstantial evidence to justify a finding of bad faith. "In the absence of direct evidence, bad faith can be shown by circumstantial evidence. Circumstantial evidence includes: (1) [a showing that] evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Vanliner Ins. Co., et al., v. ABF Freight System, Inc., et al.*, 2012 WL 750743, at *1-2 (M.D. Fla. March 8, 2012).

Counsel for Novatus failed to take affirmative steps to monitor compliance with Novatus' duty to preserve all sources of discoverable information. In fact, neither Mr. Wood nor Novatus informed Mr. Holt of the Preservation Letter and Mr. Holt's corresponding duty to preserve relevant evidence prior to his mass deletion.

> **Q: Prior to your effort to delete and trash files, did you receive contact with regard to my [Preservation] letter of December 17th and duties to preserve from anybody at Novatus?**
>
> **A: I did not.**

(*See*, Holt Dep., 194-95). Mr. Holt engaged in a volitional act by logging into the Box.com account, searching for Selectica files to purge, and wiping those files from storage. Given that this spoliation occurred *after* Novatus was aware that this information existed, *after* the lawsuit was filed, and *after* Plaintiff's Preservation Letter, Novatus either knew or should have known of its duty to preserve the evidence. Novatus' destruction of evidence was indubitably in bad faith given the circumstantial evidence surrounding the spoliation.

Plaintiff easily hurdles the four-factor test for circumstantial evidence set forth in *Vanliner Ins. Co.* First, the destroyed evidence undoubtedly would have supported Plaintiff's claim for misappropriation of trade secrets, as Mr. Holt's Box account contained hundreds of Plaintiff's confidential material. Second, Mr. Holt engaged in an affirmative act by voluntarily pressing the "delete" button on his computer and/or moving all of the deleted files to the "trash bin." Third, because Defendant was already aware of the lawsuit against it and was already in receipt of Plaintiff's Preservation Letter, Defendant was under a legal duty to preserve all relevant evidence. Finally, Novatus cannot possibly assert that the spoliation was done negligently or inadvertently; indeed, it was a volitional act requiring Mr. Holt to log into and access his Box.com account, identify what information he wanted to delete, and erase that selected information. Thus, circumstantial evidence clearly establishes bad faith.

### C. Determination of Appropriate Sanctions Based on Defendant's Spoliation of Evidence

1. <u>The Court has Broad Discretion in Selecting the Appropriate Sanction for Defendant's Spoliation</u>

"The Court has broad discretion to impose sanctions" based on Defendant's spoliation. *Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *8 (M.D. Fla. Dec. 13, 2012) (*citing Flury v. Daimler Chrysler Corp*, 427 F.3d 939, 944 (11th Cir. 2005)). "Sanctions that may be imposed against a defendant for spoliation include, but are not limited to, the following: default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation." *Id.* Additionally, the Court may exercise "a panoply of sanctions for a party's failure to comply with the rules of discovery" under Fed.R.Civ.P. 37. *Optowave Co.*, 2006 WL 3231422, at *8. "The determination of an appropriate sanction should be made on a case-by-case basis." *Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *8 (M.D. Fla. Dec. 13, 2012) (*citing Optowave Co.*, 2006 WL 3231422 at *12. In making this determination, this Court should consider the following factors: "(1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *8 (M.D. Fla. Dec. 13, 2012). Given Defendant's egregious behavior, only severe sanctions will cure the prejudice suffered by Plaintiff.

a. *Novatus' Pleadings Should be Stricken As the Appropriate Sanction*

i. Novatus' Spoliation was Willful and in Bad Faith

"In the Eleventh Circuit, the most severe sanctions (such as dismissal or default) should be exercised only when there is a showing of bad faith and lesser sanctions will not suffice." *Simon Prop. Group, Inc. v. Lauria, et al.*, 2012 WL 6859404, at *8 (M.D. Fla. Dec. 13, 2012) (*citing Flury*, 427 F.3d at 944-45). As stated *supra*, both direct and circumstantial evidence support a finding of bad faith. Novatus' knowledge of the litigation, receipt of Plaintiff's

Preservation Letter, and the fact that Novatus' employee erased Selectica's confidential and proprietary information only *ten days* later leaves no doubt that Novatus' conduct was willful and in bad faith. Lesser sanctions cannot possibly cure the prejudice suffered by Plaintiff, as this critical, primary evidence was a key component of Plaintiff's causes of action. Novatus' pleadings should be stricken.

ii. Novatus' Spoliation Prejudices Plaintiff in this action.

"[W]hile it is now impossible to determine precisely what or how many documents were destroyed, the bad faith destruction of a relevant document, by itself, 'gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction.'" *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009) (citations omitted). "As a direct result of [Defendant's] wanton and willful disregard of its obligation to preserve evidence…as a litigant…, [Defendant] has inhibited the production of [key] evidence" in this case. *Id.* "Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987).

Given that key evidence in this case was intentionally erased, Plaintiff cannot possibly verify what exact documents were deleted, potentially transferred or stored elsewhere, viewed by other Novatus insiders or Seletica competitors, modified, or otherwise distributed elsewhere. What is abundantly clear, however, is that Novatus had knowledge of hundreds of Selectica documents that were unlawfully in its possession, but nevertheless purposefully destroyed those files in an attempt to hide its wrongdoing. Given the high degree of prejudice sustained by Plaintiff in moving forward with litigation, severe sanctions are warranted.


HALL, LAMB AND HALL, P.A., PENTHOUSE ONE, 2665 S. BAYSHORE DRIVE, MIAMI, FLORIDA 33133 • TEL. (305) 374-5030 • FAX (305) 374-5033

b. *Lesser Sanctions Cannot Cure the Prejudice Plaintiff Suffers but are Requested in the Alternative.*

The striking of Novatus' pleadings is the only appropriate sanction under the circumstances. Indeed,"[i]f the putative destroyer of discoverable documents were ever to believe that his actions, at worst, would only result in the presentation before a jury of evidence surrounding that destruction, he might well conclude that an unfavorable inference as to document destruction would be less detrimental than allowing certain evidence to be presented at trial." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 136 (S.D. Fla. 1987).

Even if the Court determines that the bad faith and intentional spoliation do not justify striking Novatus' pleadings, at a bare minimum, Plaintiff is entitled to an adverse inference. *See, e.g., Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293 (M.D. Fla. 2009) (finding adverse inference appropriate sanction for spoliation of data despite declining to strike pleadings); *James v. U.S. Airways, Inc.*, 375 F.Supp.2d 1352, 1355 (M.D. Fla. Mar. 4, 2008) (holding that issue of spoliation can be resolved "through the use of litigation sanctions, adverse inferences and other means within the Court's authority"). Plaintiff is undoubtedly entitled to such an inference where, as here, the Defendants acted in bad faith when intentionally deleting critical data after receipt of Plaintiff's Preservation Letter. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1322 (11th Cir. 2011) ("The doctrine of spoliation permits the trier of fact to draw an inference that, if records were destroyed in bad faith, it was done so to impede the opposing party from obtaining evidence that would support the latter's position."). However, these sanctions are only requested in the alternative to the more appropriate sanction of striking Novatus' pleadings described herein.

WHEREFORE, Plaintiff, Selectica Inc., respectfully requests that the Court enter an order: (i) granting the instant motion; (ii) finding that Novatus intentionally destroyed evidence

in bad faith; (iii) striking Novatus' pleadings; (iv) or in the alternative, entering an adverse inference; (v) awarding Plaintiff its reasonable attorneys' fees and costs incurred as a result of Novatus' spoliation, and (vi) awarding any such other and further relief that this Court deems just and proper.

**Certificate of Good Faith Conference**

Pursuant to Local Rule 3.01(g), counsel for Plaintiff (Andrew C. Hall, Esq. and Jonathan R. Woodard, Esq.) conferred via telephone in good faith with counsel for Novatus (Ginny Childs, Esq.) as to the issues raised in this motion on November 19, 2014. Ms. Childs confirmed that Novatus would not agree to the relief requested herein, but requested time to speak with co-counsel, David Wood. After not hearing back from either Ms. Childs or Mr. Wood, counsel for Plaintiff again conferred via telephone with counsel for Novatus (Ginny Childs, Esq.) on November 24, 2014, who asserted that she again wanted time to discuss with Mr. Wood. A third meet and confer telephonic conference took place on December 2, 2014 with Mr. Wood, but the parties were unable to resolve the issues raised in this motion.

Dated: December 5, 2014

s/ Andrew C. Hall
Andrew C. Hall, Esq.
Brandon R. Levitt, Esq.
Jonathan R. Woodard, Esq.
HALL, LAMB AND HALL P.A.
2665 South Bayshore Drive, PH1
Miami, Florida 33133
Tel.: (305) 374-5030
Fax: (305) 374-5033
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via email upon: David Wood (david.wood@akerman.com) and E. Ginnette Childs (ginny.childs@akerman.com), Akerman LLP, 420 South Orange Avenue, Suite 1200, Orlando, Florida 32801, on this 5th day of December 2014.

s/ Brandon R. Levitt
Brandon R. Levitt