UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SELECTICA, INC.,

    Plaintiff,

v.                                                    Case No:   6:13-cv-1708-Orl-40TBS

NOVATUS, INC.,

    Defendant.

## ORDER

    This case is before the Court following a March 4, 2015 hearing on Defendant Novatus, Inc.'s Motion to Strike the Declaration of Jeffrey H. Grosman or, in the Alternative, Motion for Sanctions (Doc. 80).   The motion is due to be denied.

    The parties are business competitors (Doc. 1).   In 2013, four of Plaintiff's employees resigned and went to work for Defendant (Id.).   Plaintiff alleges that these individuals delivered its confidential and proprietary information to Defendant and that Defendant used the information to poach Plaintiff's existing and prospective customers (Id.).   Plaintiff's complaint includes counts for misappropriation of trade secrets, conversion of confidential and proprietary information, common law unfair competition, and tortious interference with business relationships (Id.).

    Defendant noticed Plaintiff's deposition pursuant to Fed. R. Civ. P. 30(b)(6) (Doc. 111-4 at 2).   The matters upon which Defendant said it would inquire included Plaintiff's profits and losses, and any and all damages Plaintiff was seeking, including the gross revenue and net profit Plaintiff was claiming it lost as a result of Defendant's activities alleged in the complaint (Id.; Doc. 80-1).   Plaintiff produced Michael Mothersbaugh to

testify concerning most of Defendant's areas of inquiry but, Plaintiff was very clear that Mr. Mothersbaugh was not its designated representative on the issue of damages (Doc. 80-2 at 3, 5).

Plaintiff designated Michael Townley to testify about its damages (Doc. 80 at 2; Doc. 97 at 15). He is an investment banker retained by Plaintiff's attorneys as a testifying expert witness in the case (Doc. 69-2, ¶ 1). Mr. Townley employed a comparable company valuation methodology to calculate the amount of damages Plaintiff suffered as the result of Defendant's alleged wrongdoing (Id., ¶ 11). He did not know the name of any customer or the revenue or profit attributable to any customer that moved its business from Plaintiff to Defendant, and he did not analyze Plaintiff's lost profits (Doc. 80 at 6-12).

Defendant has filed a motion for partial summary judgment asserting that under Florida law, Plaintiff can only recover damages equal to: (1) its actual loss; (2) any unjust enrichment; or (3) a reasonable royalty (Doc. 57 at 13). Defendant argues, *inter alia*, that Mr. Townley's methodology is inappropriate and fatally flawed because it does not provide a calculation of any of the types of damages permitted by Florida law. Consequently, Defendant concludes that there is no evidence in the record to support an award of damages to Plaintiff (Id., at 12-17).

Plaintiff's response to the summary judgment motion includes the declaration of its chief operating officer, Jeffrey H. Grosman (Doc. 69-2 at 78). Mr. Grosman provides his understanding that a prospective customer, O'Reilly Auto Parts, broke off communications with Plaintiff after Defendant sent O'Reilly a spreadsheet of purported defects in Plaintiff's software (Id., ¶ 3). The spreadsheet allegedly contained Plaintiff's confidential, proprietary, and trade secret information (Id.). According to Mr. Grosman,

this caused Plaintiff to suffer a $620,000 loss (Id., ¶ 4).   Mr. Grosman also offers his understanding that Defendant solicited one of Plaintiff's existing customers, University of Minnesota Physicians ("UMP") to breach its contract with Plaintiff and that this caused Plaintiff to lose an additional $134,719.66 (Id., ¶¶ 6-7).

Defendant is asking the Court to strike Mr. Grosman's declaration on the grounds that it was filed after the discovery deadline, it changes Plaintiff's theory of its damages, Plaintiff is bound by Mr. Townley's Rule 30(b)(6) testimony, the declaration contradicts Mr. Townley's testimony, Plaintiff has failed to explain the contradiction, and other evidence in the record disproves Mr. Grosman's understanding of the facts surrounding Plaintiff's loss of the UMP business (Doc. 80).

In its response, Plaintiff alleges that Defendant employed improper and misleading discovery tactics to conceal the information necessary for Plaintiff to timely disclose the damages claimed in Mr. Grosman's declaration (Doc. 97 at 1-8).   Plaintiff says that when Mr. Townely prepared his damage report it did not know about Defendant's communications with O'Reilly and UMP, and Defendant should not be permitted to benefit from its misconduct (Id.).   Plaintiff also distinguishes between Mr. Townely's testimony which it acknowledges is his opinion, and Mr. Grosman's testimony which characterizes as facts (Id., at 14-15).   Finally, Plaintiff argues that because Mr. Townley and Mr. Grosman have testified to different types of damages their evidence is not contradictory but even if it was, both witnesses' testimony is admissible.[1]

It is impossible for a corporation to provide deposition testimony other than through people who speak on its behalf.   The procedure for the deposition of a corporation is set

---

[1] Plaintiff also argued that only pleadings are subject to motions to strike but it conceded at the hearing that there are cases permitting a motion to strike an affidavit or declaration.

- 3 -

out in Rule 30(b)(6). It is markedly different from the procedure for taking the deposition of an individual. First, the party seeking to depose a corporation must specify with reasonable particularity the topics upon which inquiry will be made. Id. Then, the corporation must designate the person or persons who consent to testify on its behalf, and the matters about which they will testify. Id. The corporation has an implicit duty to prepare its designees so that they are able to "testify about information known or reasonably available to the organization." Id.; See 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2103, pp. 455-57 (3d ed. 2010). What the corporation's designees say at deposition is its testimony, and is binding upon the corporation. Peeler v. KVH Indus., Inc., Case No. 8:12-cv-1584-T-33MAP, 2014 WL 117101, at *7 (M.D. Fla. Jan. 13, 2014); Craig Air Ctr., Inc. v. City of Jacksonville, Case No. 3:10-cv-48-J-31TEM, 2012 WL 3139547, at *7, n.22 (M.D. Fla. Aug. 1, 2012); QBE Ins. Corp. v. Jorda Enter., Inc., 277 F.R.D. 676, 690 (S.D. Fla. Jan. 30, 2012).

The question is, what does it mean to say the corporation is "bound" by the testimony? The parties did not cite, and the Court did not locate an Eleventh Circuit opinion on this issue. Cases from other circuits lead me to conclude that just because the corporation is bound by the testimony of its designee does not mean that the testimony is conclusive, or that the corporation is estopped from controverting the testimony with other evidence. In R & B Appliance Parts, Inc. v. Amana Co., L.P., 258 F.3d 783, 786-87 (8th Cir. 2001), the Eighth Circuit explained:

> Although Amana is certainly bound by Mr. Schnack's testimony, it is no more bound than any witness is by his or her prior deposition testimony. A witness is free to testify differently from the way he or she testified in a deposition, albeit at the risk of having his or her credibility impeached by introduction of the deposition. R & B seems to think that Amana is estopped from denying the truth of Mr. Schnack's

- 4 -

>deposition testimony. Even though we have not defined with precision when a party is estopped by a prior assertion advanced in litigation, we recognize that the purpose of such an estoppel is to protect "'the integrity of the judicial process,'" Hossaini v. Western Missouri Med. Ctr., 140 F.3d 1140, 1143 (8th Cir. 1998), *quoting* Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 n. 6 (8th Cir. 1987). No threat to the integrity of the judicial process has been posed in this case, and Amana was thus free to assert at trial that the Distribution Agreement had not been terminated.

The Seventh Circuit reached the same conclusion in A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001). Several district courts agree. Indus. Hard Chrome, Ltd. v. Hetran, Inc., 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); United States v. Taylor, 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission); State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc., 250 F.R.D. 203, 212 (E.D. Pa. 2008) ("the better rule is that 'the testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.'") (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2103 (Supp. 2007)).

The Grosman declaration injects a new methodology for the calculation of Plaintiff's damages into this action but it is not a sham as is the case when the same witness submits an affidavit in contradiction of his own prior testimony in an attempt to defeat a motion for summary judgment. See, Pashoian v. GTE Directories, 208 F.Supp.2d 1292, 1298 (M.D. Fla. 2002) ("A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion, that, by omission or

- 5 -

addition, contradicts the affiant's previous testimony.").

The next question is when did Plaintiff learn the information contained in the Grosman declaration?   Plaintiff alleges that it only became aware of Defendant's actions toward O'Reilly and UMP after Mr. Townely prepared his expert report (Doc. 97 at 5).  The evidence does not support this assertion.   Mr. Townley's report is dated August 8, 2014, and he gave his Rule 30(b)(6) deposition testimony on November 6, 2014 (Doc. 60-1; Doc. 111-3).   In May, 2014, Plaintiff filed its renewed motion for leave of court to file a counterclaim (Doc. 28).   The averments in the proposed counterclaim reveal that Defendant had been in communication with O'Reilly (Doc. 28-1 at ¶¶ 13-15).   It is also clear that Plaintiff knew about UMP by July 2, 2014 at the latest because that is the date upon which Plaintiff filed its motion for leave to amend its complaint to add allegations that Plaintiff lost UMP's business on account of Defendant's wrongdoing (Docs. 35 and 35-1 at ¶ 55).   Therefore, the Court finds that Plaintiff could have prepared Mr. Townley to testify concerning O'Reilly and UMP at his Rule 30(b)(6) deposition.

Defendant has been unfairly prejudiced by the disclosure of this additional damage claim after the close of discovery when it no longer has an opportunity to depose Mr. Grosman.   Ordinarily at this point, the Court would strike the declaration.   But, it is part of the briefing on Defendant's motion for partial summary judgment currently pending before the district judge.   This Court is reluctant to strike part of the record now under consideration by the district judge.   For this reason, the Defendant's motion to strike is **DENIED**.   So that Defendant is not left without any remedy, it is granted leave to file a written objection to Mr. Grosman's declaration in which it may wish to reference this Order.   The objection shall not exceed 4 pages in length and shall be filed within 14 days from the date of this Order.

**DONE** and **ORDERED** in Orlando, Florida on March 6, 2015.

*[signature]*

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record