UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SELECTICA, INC.,

    Plaintiff,

v.                                         Case No:   6:13-cv-1708-Orl-40TBS

NOVATUS, INC.,

    Defendant.

## ORDER

On March 4, 2015, the Court heard oral argument on Plaintiff's Motion for Sanctions Due to Bad Faith Spoliation of Evidence (Doc. 61).   For the reasons that follow, the motion is due to be denied.

Plaintiff Selectica, Inc., employed non-parties, Marilyn Salyer, Vicki Sorenson, Ian Connerty, and Graham Holt as direct sales people (Doc. 1, ¶ 20).   Each of them signed Selectica's Proprietary Information and Inventions Agreement (the "Proprietary Agreement"), in which they promised to hold in confidence and not disclose proprietary information that came into their possession except within the scope of their employment (Id., ¶ 11).   They also promised that if they left Selectica they would promptly return all proprietary information to the company (Id.).   In September 2013, they all resigned from Selectica and went to work for its competitor, Defendant Novatus, Inc. (Id., ¶¶ 20-25). Novatus was aware of and had seen a copy of the Proprietary Agreement before it hired Salyer, Sorenson, Connerty, and Holt (Doc. 61 at 4).   Selectica complains that prior to their departure, all four individuals accessed and copied its confidential, proprietary information which was downloaded and transferred onto Novatus' computer system when

they started their new employment (Doc. 1, ¶ 26; Doc. 61 at 2).  Selectica alleges that soon after they began their new employment, Salyer, Sorenson, Connerty, and Holt began using its confidential, proprietary information to unlawfully compete with Selectica (Doc. 61 at 2).

This motion concerns Holt.  While employed by Selectica, he had a company laptop computer which, on Selectica's recommendation, was configured so that it automatically synced to his personal cloud storage account at Box.com (Doc. 71 at 4).  This meant that when Holt saved a file to the laptop, the system pushed a copy to his Box account (Doc. 71 at 4).  The account did not contain any unique Selectica files, and all the information was accessible by other Selectica employees elsewhere on Selectica's systems (Id.).  Selectica is in possession of the laptop Holt used when he worked for the company and there is no evidence that it was tampered with or altered (Id., at 4, 7).

In October 2013, when Holt started at Novatus, he offered to share Selectica's pricing information with Sharon Muniz, a member of Novatus' senior management (Doc. 61 at 5-7).  Muniz told Holt to send her the information which he did by emailing her links to the files in his Box account (Id.; (Doc. 61 at 6; Doc. 71 at 5).  At her deposition, Muniz admitted receiving the links but she testified that she never opened, forwarded, or otherwise accessed the information or Holt's Box account (Doc. 71 at 5-6).  Forensic examination of the computer Muniz uses at Novatus confirms that it was not used to open the links (Id., at 6).  There is also no evidence that Muniz opened the links using some other computer.  Holt has been deposed and testified that Muniz did not access the information or his Box account (Id., at 12).  If anyone had opened the links Holt sent to Muniz their access would have been restricted to the specific files associated with those

links (Id.).  They would not have been able to view anything else, and would not have been able to alter any information (Id.).

Selectica filed this lawsuit on November 4 and Novatus answered on November 29, 2013 (Docs. 1 and 5).  Selectica's complaint includes counts for misappropriation of trade secrets, conversion of confidential and proprietary information, common law unfair competition, and tortious interference with business relationships (Id.).  When Selectica sued Novatus it also filed a separate lawsuit against Holt individually in state court in California (Hearing).

Upon learning that it had been sued, Novatus hired a lawyer to defend the action. One of the first things the lawyer did was to advise Novatus about its obligation to preserve evidence relevant to Selectica's claims (Hearing).  On December 17, 2013, counsel for Selectica sent a litigation hold letter to counsel for Novatus (Doc. 61-1). When he received the letter, Novatus' lawyer immediately forwarded it, with instructions, to Novatus (Doc. 71, n. 12; Hearing).  Novatus did not say anything to Holt concerning the maintenance and preservation of relevant information until sometime in January, 2014 (Doc. 71 at 14).  The Court does not know what exactly was said to Holt in January, or if anything was said about his Box account.

Beginning in November but primarily on the night of December 28, 2013, Holt purged the Selectica files from his Box account (Doc. 61 at 8).  The following exchange occurred at Holt's deposition:

> Q:   Your production to Selectica in the case indicates that in a period in November and December, you removed – deleted thousands of files from your Box account.   What prompted you to do that?
>
> A:   Finding out about the litigation was what prompted me to do that.

- 3 -

> Q: How much time was there between when you found out about the litigation and when you began deleting the documents from the Box account?
>
> A: I believe it was only just a few days.
>
> Q: How did you go about doing that?
>
> A: The deletion?
>
> Q: Yes.
>
> A: I went into the application and just deleted – deleted the subfolders that I thought would, you know, know, potentially put my current employer [Novatus] in jeopardy.
>
> Q: How did you determine which documents to keep and which to delete?
>
> A: Again, I – all my folders were a Selectica master folder. Beneath that, marketing material, sales material, customers. So I deleted at a hierarchy. So it just pushed all the documents beneath those hierarchies.

(Id., at 8-10).

After deleting the files Holt emptied his "trash" in order to permanently dispose of the information (Id., at 9). Once they were deleted, the files could only be recovered for a maximum of four weeks (Id., at 9-10 and Hearing). After Novatus spoke to Holt about the preservation of relevant information he made no attempt to contact Box or any other electronic host to undo his mass deletion (Id., at 20). Despite his actions, and using means not known to the Court, Holt has produced a 68 page list of every file he deleted from his Box account (Doc. 71 at 3).

Selectica seeks the imposition of sanctions against Novatus based upon what it characterizes as the flagrant spoliation of evidence by Holt. The evidence Selectica alleges was destroyed consists of the files Holt deleted and the metadata associated with

- 4 -

those files.  Metadata is "[t]he generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file." The Sedona Conference Glossary: E-Discovery and Digital Information Management (Fourth Edition).   In other words, metadata is "*data about data*."   The Sedona Conference Journal, Commentary on Ethics & Metadata (2013).   Metadata is discoverable so long as the relevance test in Fed.R.Civ.P. 26(b) is satisfied.  U.S. v. Bridgepoint Education, Inc., Case No. 10-CV-01401-JLS (WVG), 2015 WL 818032 at * 10, 19 (S.D.Cal. Feb. 20, 2015).

Spoliation is the intentional destruction, concealment, mutilation, or material alteration of evidence.   Southeastern Mechanical Services, Inc. v. Brody, 657 F.Supp.2d 1293, 1299 (M.D.Fla. 2009); Optowave Co. v. Nikitin, Case No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D.Fla. Nov. 7, 2006).   Spoliation is an evidentiary matter and therefore, in federal cases the issue is governed by federal law.  Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005), cert. denied, 126 S.Ct. 2967 (2006). The inherent power of federal courts to manage their own affairs and Fed.R.Civ.P. 37 give courts the authority to impose sanctions for the spoliation of evidence.   In re NTL, Inc. Securities Litigation, 244 F.R.D. 179, 191 (S.D.N.Y. 2007).

Before a court will impose sanctions for spoliation the moving party must establish that: (1) the party in control of the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a "culpable state of mind" and (3) a reasonable trier of fact could find that the evidence that was destroyed would support a claim or defense in the case.  Posely v. Eckerd Corp., 433 F.Supp.2d 1287, 1315 (S.D.Fla. 2006).   The Eleventh Circuit has not articulated specific guidelines for the imposition of sanctions for spoliation.   Consequently, courts in this circuit "may look to

state law principles for guidance so long as the principles are consistent with federal spoliation principles." Southeastern 657 F.Supp.2d at 1299. Under Florida law, "spoliation is established when the party seeking sanctions proves (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." Floeter v. City of Orlando, Case No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633 (M.D.Fla. 2007).

The Court finds that relevant information concerning the claims in this lawsuit existed in Holt's personal Box account when the action was filed and served on Novatus.

The next issue is whether Novatus had a duty to maintain and preserve Holt's personal Box account. "Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a 'litigation hold' to ensure the preservation of relevant documents." Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494, 511 (D.Md. 2009) (quoting Thompson v. U.S. Dept. of Housing & Urban Development, 219 F.R.D. 93, 100 (D.Md. 2003)); U.S. ex rel. King v. DSE, Inc., 2013 WL 610531, at * 7 (M.D.Fla. Jan.17, 2013) report and recommendation adopted, 8:08-cv-2416-T-23EAJ, 2013 WL 608541 (M.D.Fla. Jan. 15, 2014) (When party becomes aware of claims or defenses it has an obligation to conscientiously preserve all evidence that is relevant to those claims and defenses that is in existence when the duty to preserve attaches.). Parties must "act reasonably by taking 'positive action to preserve material evidence.'" Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 525 (D.Md. 2010) (quoting Jones v. Bremen High School Dist. 228, Case No. 08 C 3548, 2010 WL 2106640 at *6 (N.D.Ill. 2010). Once it was served with Selectica's complaint, and at the absolute latest, when it received the litigation hold letter, Novatus was under a

duty to preserve relevant information.

A party can only preserve evidence that is within its possession, custody, or control.  See, e.g., Posely, at 433 F.Supp.2d at 1315.  Possession, custody, and control are not the same thing.  A party may be in control of information that it does not own or physically possess.  Pictet Overseas, Inc. v. Helvetia Trust, Case No. 13-81088-CIV, 2014 WL 5034725 at * 8 (S.D.Fla. Sept. 8, 2014).  "'Control' has been construed broadly by the courts as the legal right, authority or practical ability to obtain the materials sought upon demand."  In re NASDAQ Market-Makers Antitrust Litigation, 169 F.R.d. 493, 530 (S.D.N.Y. 1996).  This Court agrees with those courts that have employed the practical ability test to determine whether a party has control, and therefore a duty to preserve information.  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2nd Cir. 2007); Pictet, 2014 WL 5034725, at * 8; DeSoto Health & Rehab., L.L.C. v. Philadelphia Indemnity Ins. Co., Case No. 2:09-cv-599-FtM-99SPC, 2010 WL 4853891 at * 3 (M.D.Fla. Nov. 22, 2010); Goodman 632 F.Supp.2d at 514; NTL, 244 F.R.D. at 196; Steele Software Systems Corp. v. Dataquick Info. Sys., Inc., 237 F.R.D. 561, 564 (D.Md. 2006). Using this test, a party might control a non-party based upon their relationship.  The attorney-client relationship and the corporate parent-subsidiary relationship are examples.  A party may control a non-party if there is a contract empowering the party to obtain information from the non-party.  Control may also exist if it is customary in the industry for the non-party to furnish the information to the party.  On the other hand, if extraordinary, unethical, or illegal means are required, then there is no practical ability to obtain the information.

The employer-employee relationship is one that may result in an employer party having the necessary control over information in the possession of a non-party employee.

"Relationships which evidence a legal right of a party to obtain a document from non-party include … an employer from current employees." Bleecker v. Standard Fire Ins. Co., 130 F.Supp.2d 726, 739 (E.D.N.C. 2000). This is consistent with the holdings in cases discussing the control an employer may possess over former employees. See, e.g., Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd., 233 F.R.D. 338, 341-42 (S.D.N.Y. 2005) ("Analyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession."); In re Folding Carton Antitrust Litigation, 76 F.R.D. 420, 423 (N.D.Ill. 1977) ("In the meantime, we assume that, if defendants contact their former employees who still receive compensation from them, they will secure the requested documents and can produce them to plaintiffs."). The Court is mindful of the decision in Nalco Chemical Co. v. Hydro Technologies, Inc., 148 F.R.D. 608 (E.D. Wis. 1993) holding that a corporation did not have the requisite control to compel its employees to provide exemplars of their fingerprints. The case is distinguishable because fingerprints are personal, anatomical features fundamentally different from the business files Holt possessed.

When Novatus' obligation to preserve relevant information was triggered, Holt was its employee. Given the averments in the complaint, and Novatus' knowledge that Holt possessed Selectica's files, Novatus also knew Holt was a key figure in this dispute. "'[K]ey players' are the 'employees likely to have relevant information.'" Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004) (quoting Zubulake v, UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)). Holt was obviously a willing and cooperative employee inasmuch as he had already volunteered to share Selectica files

with Novatus, and when Muniz told him to send files to her, he complied.   Muniz' action also shows that Novatus was not concerned about Holt's obligations under the Proprietary Agreement.   This leads the Court to conclude that Novatus had access to, and the ability to produce the files in Holt's Box account.   The Court also finds that when the Selectica complaint was served on Novatus, the corporation was obligated to instruct Holt to maintain and preserve all of the Selectica files in his personal Box account.[1]   Goodman at 517.

The next question is whether the information Holt destroyed is crucial to the case.  This can be a difficult issue upon which to present direct evidence because it concerns information that no longer exists.   Therefore, "courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of the evidence." Southeastern, 657 F.Supp.2d at 1300 (citing Kronisch v. U.S., 150 F.3d 112, 128 (2d Cir. 1998)); see also Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC, Case No. 6:12-cv-22-Orl-28DAB, 2012 WL 10817204, at *3 (M.D. Fla. Nov. 30, 2012).   In Southeastern the court said "[t]he substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a plaintiff."   657 F.Supp.2d at 1300.   Courts have also found that bad faith alone "gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for destruction." Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1282 (M.D.Fla. 2009) (citations omitted).

---

[1] At least one court has gone further, finding that even if a party did not have the ability to preserve information because it lacked ownership or control, the party "still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving the evidence."   Goodman 632 F.Supp.2d at 514.

The files Holt deleted are not crucial to Selectica proving its case because they were all copies of documents that still exist. The files are still on the laptop Holt used when he worked for Selectica, and on Selectica's other systems, all of which are in Selectica's possession. And, there is no question about what Holt deleted because the parties have a list of the files.

The more difficult question concerns the medadata associated with the files Holt deleted. In most cases, metadata is unlikely to have any evidentiary value to the parties. But in cases involving the alleged theft and misuse of electronically stored information, the parties may very well utilize metadata to establish their claims and defenses. That is certainly true in this case. At their initial case management conference the parties agreed that files would be produced in native format "with accompanying metadata in a Concordance delimited .DAT file and Summation–ready .TXT metadata file." (Doc. 14 at 4).

It is possible that the metadata associated with Holt's Box account would have shown if any of the Selectica files he took were opened, which files were opened, when they were opened, and whether any of the files were transferred or downloaded.[2] According to Selectica, this information "is a critical component to finding that Novatus' misappropriated Plaintiff's confidential information for Defendant's pecuniary gain, and unlawfully competed with Plaintiff for customers in the contract management market. Furthermore, without this evidence, Plaintiff is unable to know whether its trade secrets and proprietary information were copied elsewhere, modified, or stored on other devices. Plaintiff cannot be sure who else viewed or destroyed documents, particularly other

---

[2] This is only a possibility because there is no evidence before the Court to establish that this information existed or was retrievable. Still, Novatus has not denied that the information existed and could have been discovered.

Novatus employees, Plaintiff's customers, or prospective customers."   (Doc. 61 at 16-17).   The Court disagrees.

Selectica is seeking damages and injunctive relief based upon Novatus' alleged acquisition and use of its confidential and proprietary information to solicit Selectica's employees to join Novatus, and to solicit Selectica's existing and prospective customers. Metadata is not necessary to show that Holt misappropriated Selectica's files, he has admitted that.   Assuming the metadata would have shown that Selectica's files were viewed, copied, forwarded, or downloaded, there is no evidence that the metadata would have revealed the identity of the perpetrator(s) or what they did with the information. And, there is already evidence showing that Novatus had control of the files.   The metadata also would not prove that Novatus illegally competed with Selectica for employees or customers.   That evidence will come from Novatus' current and former employees who engaged in the solicitations, and the people they solicited.   Assuming someone modified the Selectica files in Holt's Box account, the Court fails to see why that information is relevant or crucial.   What Selectica might have used the metadata for would be to impeach Holt if he testifies that nobody accessed, copied, forwarded, or downloaded the files in his Box account.   Selectica already has other evidence to impeach Holt's credibility and any additional ammunition the metadata might provide does not make it crucial to the case.

This brings the Court to the question of Novatus' good or bad faith.   The Court has no difficulty finding that Holt acted in bad faith when he destroyed the files in his Box account.   However, there is no evidence that he acted on instructions from Novatus, or with its knowledge or approval.   Novatus' culpability lies in the fact that it failed until after it was too late, to instruct Holt to preserve all of the relevant information he had.

Selectica cites Golia v. Leslie Fay Co., Case No. 01 Civ 1111 (GEL), 2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003) and NTL for the proposition that a party's failure to adequately instruct its employees to preserve evidence is sufficient to warrant the imposition of sanctions.  While instructive, neither case is binding on this Court.  In the Eleventh Circuit, sanctions may be imposed for the spoliation of evidence "when the absence of that evidence is predicated on bad faith.... 'Mere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case."' Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997) (quoting Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975); Point Blank Solutions, Inc. v. Toyobo America, Inc., Case No. 09-61166-CIV, 2011 WL 1456029 (S.D.Fla. April 5, 2011).  There is no evidence that Novatus acted willfully, purposefully, or otherwise in bad faith when it failed to place a litigation hold on the information in Holt's Box account.  So, while Novatus' inaction may be characterized as negligence, or even gross negligence, it will not support the imposition of sanctions.

For these reasons, Selectica's motion for sanctions based upon the spoliation of evidence by Novatus is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on March 12, 2015.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record